# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **FEDERAL HOME LOAN** ) | |
| **MORTGAGE CORPORATION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:10-CV-2565-VEH |
| ) | |
| **SAMUEL L. PARKER,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac") initiated this ejectment proceeding arising under the Federal Home Loan Mortgage Corporation Act of 1970 and Alabama law against Defendant Samuel L. Parker ("Mr. Parker") on September 20, 2010. (Doc. 1). Subject matter jurisdiction exists pursuant to 12 U.S.C. § 1452(f)(2) on the basis that this court has original jurisdiction over actions to which Freddie Mac is a party. *See id.* ("[A]ll civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value[.]").

Mr. Parker filed an answer and counterclaim (Doc. 7) on October 13, 2010. Freddie Mac answered the counterclaim (Doc. 12) on October 25, 2010. This case was reassigned to the undersigned on April 20, 2011. (Doc. 22).

Pending before the court is Freddie Mac's Motion for Summary Judgment (Doc. 16) (the "Motion") that was filed on April 1, 2011. Freddie Mac also filed its supporting brief and evidence on April 1, 2011. (Docs. 17-20).

Mr. Parker filed his opposing brief (Doc. 24) and affidavit (Doc. 25) on April 24, 2011, and May 6, 2011, respectively. On May 9, 2011, Freddie Mac filed its reply. Accordingly, the Motion is now under submission, and, for the reasons explained below, is due to be granted.

## II.   BACKGROUND[1]

On or about May 25, 2007, Mr. Parker entered into and executed that certain note (the "Note"), in favor of Taylor, Bean & Whitaker Mortgage Corporation

---

[1] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following underlying facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

("TBW") on real estate (the "Property") that he owned.  AF No. 1.[2]  On or about May 25, 2007, Mr. Parker also executed a mortgage (the "Mortgage") securing the Note in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as a nominee for TBW, and its successors and assigns.  AF No. 2.1.  That Mortgage securing $325,000.00, was recorded on or about June 7, 2007, as Instrument No. 147802/1 in the Probate Office of Cherokee County, Alabama.  AF No. 2.2.

On or about June 20, 2008, MERS assigned the Mortgage to TBW, which assignment was recorded on or about July 11, 2008, as Instrument Number 155233/1 in the Probate Office of Cherokee County.  AF No. 3.  On or about June 23, 2008, TBW foreclosed the Mortgage.  AF No. 4.1.  Pursuant to the foreclosure sale, a foreclosure deed, vesting title in TBW was executed on June 23, 2008 (the

---

[2] Most of these facts are taken from Freddie Mac's brief in support of its Motion (*see generally* Doc. 17 ¶¶ 1-21), as Mr. Parker has not opposed them consistent with the requirements of Appendix II of the court's uniform initial order. (*See generally* Doc. 24; *see also* Doc. 9 at 17 ("The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts." (emphasis omitted)); *id.* ("All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." (emphasis omitted))).  The designation "AF" stands for admitted fact.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. 2.2) would indicate the second sentence of paragraph 2 of Freddie Mac's statement of facts is the subject of the court's citation to the record.

"Foreclosure Deed") and recorded on or about July 11, 2008, as Instrument No. 155234/1 in the Probate Office of Cherokee County. AF No. 4.2.

On or about June 23, 2008, TBW mailed a written demand for possession of the Property to Mr. Parker's address listed in the Mortgage pursuant to Alabama Code § 6-5-251 (1975). AF No. 5. On or about June 24, 2008, TBW transferred title to the Property via a special warranty deed (the "Special Warranty Deed") to Freddie Mac, which was recorded on or about July 11, 2008, as Instrument No. 155235/1 in the Probate Office of Cherokee County. AF No. 6.

As a result of the above transactions, Freddie Mac is currently the owner of the following-described Property located and situated in Cherokee County, Alabama, also known as 150 County Road 617 Lot 5, Cedar Bluff, Alabama, 35959:

> Lot Number 12 of Block B of McElrath Subdivision as the same appears of record in Plat Book 8 at Page 78 in the Probate Office of Cherokee County, Alabama. Situated in the Northeast Quarter of the Northwest Quarter of Section 35, Township 9 South. Range 10 East, in Cherokee County, Alabama.

AF No. 7.

On or about July 03, 2008, Mr. Parker filed a lawsuit in the Circuit Court of Cherokee County (the "State Action Complaint") in which he made several factual allegations including the following: that no valid foreclosure sale occurred on June 23, 2008, because he had awaited during the legal hours of that day and failed to

witness any foreclosure sale of the Property; the foreclosure sale was invalid because he was current with his payment obligations; MERS did not own the mortgage and had no standing to assign and/or foreclose the Mortgage; the loan was predatory and did not comply with Fannie Mae/Freddie Mac guidelines or the Truth in Lending Act; and the Mortgage contained an incorrect legal description.  AF No. 8.

On or about January 13, 2009, Mr. Samuel provided sworn answers to interrogatories in which he stated that he and his wife were at the courthouse on the day of the foreclosure sale on June 23, 2008, and waited from 9:00 a.m. until 12:00 p.m. and from 1:00 p.m. until 3:00 p.m. and no sale occurred.  AF No. 9.  On or about April 21, 2009, Mr. Parker was deposed under oath, and in his deposition, Mr. Parker admitted to defaulting on his payment obligation because he made only three mortgage payments.  AF No. 10.1.  Mr. Parker further conceded that he stopped making any payments as soon as he started struggling and sent in a hardship letter to TBW explaining that he could not make his payments.  AF No. 10.2.

Mr. Parker additionally testified that he was given the opportunity to cure his default but that he did not have the means to catch up on his payments.  AF No. 10.3.  Mr. Parker also acknowledged that he was aware that he was not making any mortgage payments and that it was legitimate for the bank to foreclose on the Property.  AF No. 10.4.

When giving his deposition, Mr. Parker offered conflicting accounts as to whether he was present or absent at the courthouse on the day of the purported foreclosure sale. AF No. 11.1. Contradicting his complaint and answers to interrogatories, Mr. Parker testified that he knew nothing about the foreclosure sale and that he never showed up at the courthouse. AF No. 11.2. However, later in his deposition, he stated that on June 23, 2008, the day of the purported foreclosure sale, neither he nor his wife went to the courthouse to witness it even though they knew that the sale was slated to take place that day. AF No. 11-3. Finally, Mr. Parker was unable to provide the name of any person who could allegedly verify that no sale occurred that day. AF No. 11-4.

Despite the allegation in his State Action Complaint, Mr. Parker admitted during his deposition that he did not know anything about MERS or MERS's role in the mortgage industry. AF No. 12. During his deposition, Mr. Parker also stated that he had no knowledge about the Truth in Lending Act. AF No. 13.1. In response to a question as to whether he had any problems with the actual terms of the loan, he said, "When I actually took the loan out, no, everything was fine." AF No. 13.2.

Mr. Parker describes the Property that he currently owns located at 150 County Road 617 as containing five lots consisting of a newly built house and four mobile homes (three double wides and one single wide). AF No. 14.1. Mr. Parker became

the owner of the Property, simply described as Lot 12 of Block B, by virtue of a warranty deed (the "Warranty Deed") from Myrtle Robey to him dated August 4, 2004, and recorded in Book A412, Page 78.  AF No. 14.2.

Mr. Parker claims that he subdivided the Property into five separate lots and that he only intended to mortgage the lot with the newly built house.  AF No. 15.1.  The Mortgage's legal description which he signed, however, is inconsistent with this position as it covers the entire Property:  Lot Number 12 of Block B.  AF No. 15.2.  The Mortgage further specifically cites to the Warranty Deed (which can be found at Plat Book 8 at page 78 in the Probate Office of Cherokee County, Alabama) as the source of title and does not limit itself to only a portion of the Warranty Deed.  AF No. 15.3; AF No. 15.4.  Additionally, a title search of the Property includes no reference to such subdividing.  AF No. 15.5.

Mr. Parker also takes issue with the fact that the Property he owns, as described in the Warranty Deed, makes a reference to the McElrath Subdivision in comparison to the Mortgage's legal description which makes a reference to the Clothes Subdivision.  AF No. 16.1.  This difference in subdivision names, however, appears to merely be a typographical error.  AF No. 16.2.  Also, despite this subdivision discrepancy in the Mortgage, the Mortgage does simultaneously indicate that it covers all the Property in the Warranty Deed by specifically stating that the Property to be

covered is "the same [that] appears of record in Plat Book 8 at page 78 in the Probate Office of Cherokee County, Alabama." AF No. 16.3. Mr. Parker admits that he intended to mortgage at least a portion of the Property, which is located in the McElrath Subdivision. AF No. 16.4.

On or about January 8, 2010, Mr. Parker filed a Chapter 13 Voluntary Petition for Bankruptcy in U.S. Bankruptcy Court for the Northern District of Alabama, Eastern Division (the "Bankruptcy Court"), Bankruptcy Petition number 10-40051-JJR-13. AF No. 17. On or about August 24, 2010, Freddie Mac filed a Motion for Relief from Stay with the Bankruptcy Court, asking the court to grant leave from the automatic stay of the Bankruptcy Court so as to allow it "to obtain[] possession of the real property from [Defendant]." AF No 18.

On or about September 14, 2010, Judge James J. Robinson of the Bankruptcy Court issued an order granting the Motion for Relief from Stay (the "Relief Order"). AF No. 19.1. The Relief Order provides that "all parties have consented to the entry of this order without a hearing and without further notice, and all parties agreed to the relief or other resolution as provided below." AF No. 19.2. Mr. Parker has not vacated the Property. AF No. 20.

**III.   STANDARD**

Summary judgment is proper only when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Finally, "[i]f the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d 1270, 1275 (11th Cir. 2006) (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

**IV.  ANALYSIS**

    **A.  Freddie Mac's Ejectment Claim**

Freddie Mac is entitled to summary judgment because it has affirmatively shown satisfaction of the requirements that a plaintiff must meet to prevail in an

action for ejectment under Alabama law. In *Steele v. Federal Nat. Mortg. Ass'n*, No. 1091441, 2010 WL 4910829 (Ala. Dec. 3 2010), the Supreme Court of Alabama recently explained:

> Actions in ejectment or actions in the nature of an action in ejectment are governed by § 6–6–280, and we are bound to interpret the language of that statute to mean exactly what it says. *Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen*, 714 So. 2d 293, 296 (Ala.1998). Section 6–6–280 provides:
>
>> (a) A plaintiff commencing an action for the recovery of lands or the possession thereof has an election to proceed by an action of ejectment or by an action in the nature of an action of ejectment as is provided in subsection (b) of this section.
>>
>> (b) An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without a statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or <u>has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same</u>. This action must be commenced in the name of the real owner of the land or <u>in the name of the person entitled to the possession thereof</u>, though the plaintiff may have obtained his title thereto by a conveyance made by a grantor who was not in possession of the land at the time of the execution of the conveyance thereof. The plaintiff may recover in this action mesne profits and damages for waste or any other injury to the lands, as the plaintiff's interests in the lands entitled him to recover, to be computed up to the time of the verdict.

*Steele*, 2010 WL 4910829, at *3 (emphasis added).

Among other things, Freddie Mac has demonstrated its superior legal title to the Property through providing the court with copies of the Mortgage, Warranty Deed, and Foreclosure Deed, which documents have not been materially challenged by Mr. Parker. The court acknowledges that Mr. Parker contests the validity of the foreclosure proceedings due to the subdivision error contained in the Mortgage. (Doc. 24 at 2 (incorrectly listing Clothes Subdivsion instead of McElrath)). However, because Mr. Parker has admitted that he intended to mortgage at least a portion of the Property, which is located in the McElrath Subdivision, the existence of a mere typographical mistake, without more, does not invalidate the Mortgage or subsequent foreclosure sale. Furthermore, the record reveals no error in the legal description of the Property that is set forth in the Warranty Deed, *i.e.*, "the same [that] appears of record in Plat Book 8 at page 78 in the Probate Office of Cherokee County, Alabama." Therefore, the court rejects this challenge by Mr. Parker.

The court likewise finds without merit Mr. Parker's position that he intended only for a portion of the Property to be subject to the Mortgage and/or foreclosure. First, nothing in the financing documents suggests that such a limitation was ever contemplated by the parties. Second, even if Mr. Parker in good faith believed that he only partially mortgaged the Property, he has offered no evidence to show that the

mortgagee had a similar understanding of the parties' transaction or somehow improperly misled Mr. Parker about the true nature of the financing arrangement. Third, Mr. Parker has offered no controlling case authority that allows a debtor to avoid an action for ejectment upon foreclosure due to that party's misunderstanding of the terms of the transaction.

The remaining arguments offered by Mr. Parker in opposition to the Motion, including the unsubstantiated contention that a foreclosure sale never took place, are underdeveloped and unavailing. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court). Accordingly, the court concludes that Freddie Mac is entitled to summary judgment on its action for ejectment.

### B. Mr. Parker's Counterclaims Against Freddie Mac

Freddie Mac also has moved for summary judgment on the counterclaims that Mr. Parker has asserted against it. In response, Mr. Parker has attempted to support only one of his counterclaims:

> That the Plaintiff charged the Defendant hazard insurance costs

>when in fact the Defendant had the property insured through Nationwide insurance, thereby increasing the total amount owed on the property to the Plaintiff's advantage.

(Doc. 24 at 2).

Accordingly, the court finds that all other counterclaims have been abandoned or waived by Mr. Parker. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (citations omitted)); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Hudson v. Norfolk Southern Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (citations omitted)); *cf. McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the

plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

As for Mr. Parker's complaint about forced-placed hazard insurance, the court preliminarily notes that Mr. Parker has not included this claim in his responsive pleading. (*See generally* Doc. 7). As a result of this pleading omission, the court is not obligated to address this theory of relief.

Additionally, even assuming the truth of the allegations that he was improperly charged hazard insurance, Mr. Parker has offered no evidence to show that the costs of such hazard insurance were ever even paid to the mortgagor and/or materially contributed to his default on the Mortgage. Instead, Mr. Parker's testimony confirms that he only made three payments under the Mortgage, that he did not have the ability to cure the default, and that the Property was properly subject to the right of foreclosure due to his non-payment. Accordingly, the court further finds that Freddie Mac is entitled to summary judgment on Mr. Parker's purported counterclaim relating to hazard insurance.

## V. CONCLUSION

Accordingly, for the reasons explained above, the Motion is due to be granted.

The court will enter a separate order.

**DONE** and **ORDERED** this the 20th day of September, 2011.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge